Hitchcock, C. J.
In January, 1818, an act was passed, by the general assembly of Ohio, “ to incorporate the stockholders of the Bank of Circleville f’ but no bank was put in operation under this act until 1839 or 40, when certain individuals, professing to act under the charter, effected an organization, issued notes for circulation, and engaged in banking business.
In April, 1842, Julius L. Wyman filed his petition, in the Pickaway county common pleas, against the-Bank of Circleville, praying that receivers .of its assets might be appointed. This proceeding was under the law of February, 1842, for the appointment of bank commissioners, and for other purposes, (40 Ohio L. 13.) In due time receivers were appointed.
The receivers, so appointed, filed their bill in chancery, supplemental- to Wyman’s petition, on the 10th of June, 1842, against Fanus Crouse, Willi-am Alkire, Peter Yoorhees, the complainant in review, and others, charging them as stockholders in said bank, praying that they should be compelled to pay their subscriptions of stock, or so much -thereof as might be necessary to pay the debts of the institution.
*466 To this bill Yoorhees filed an answer, on the 12th of August, 1842, denying, positively, that he was ever a stockholder. Thi3 answer was under oath, as called for in the bill.
On the 30th April, 1844, the bill of the receivers was amended, so as to stand as an original bill.
Testimony was taken in the case, and at the June term of the court, 1846, of the court of common pleas of Pickaway county, the bill was dismissed and an appeal taken, by the receivers, to the supreme court.
At the November term, 1847, of the supreme court in Pick-away county,' the case, after full argument, was submitted to the court, and after full consideration, a decree was entered against the then defendants. In this decree the court found, that Yoorhees and the other defendants were stockholders in the bank, at. the time of filing the bill and of the rendition of the decree, and that they were and are indebted for stock, by them severally holden, in the respective amounts specified in the decree. Peter Yoorhees was found to be the owner and holder of seven hundred shares of capital stock, and that he owed, on said stock, the sum of twenty-nine thousand seven hundred and fifty dollars. The court further found, that the said president,' directors and company of the Bank of Circle - ville, at the time of filing the petition of Julius L. Wyman, had transacted the business of banking, at the town of Circleville, in Pickaway county, Ohio, under and by virtue of the act of the general assembly of the State of Ohio, entitled “ an act to incorporate the stockholders of the Bank of Circleville,” passed January 14, 1818, and that the complainants named in the bill were duly constituted and appointed receivers, etc.
On the 13th December, 1847, on petition of Peter Voorhees, the complainant in this bill of review, to one of the judges who pronounced the decree, a rehearing was allowed so far as the said Yorhees w-as concerned.
Further testimony was taken, and the case was again ar gued and submitted to the court, at the November term, 1848.
*467 On this latter hearing, the court again found the equity of the case to be with the complainants, as to the said Peter Voorhees. In the decree at this term rendered, reference is had to the decree of the previous term, and the court again find “ that the said Peter Voorhees was and is the holder of seven hundred shares of the capital stock of the said Bank of Circleville, named and referred to in said bill of complaint, for, and on account whereof, he, the said Peter Voorhees, doth owe, and is indebted to said bank in the sum of twenty-nine thousand seven hundred and fifty dollars, and that it is equitable that the said Peter Voorhees be required to pay to said receivers of said bank, so much of his said indebtedness as may be necessary, with the amounts which shall be collected from the said other defendants according to said former decree, to enable said receivers to discharge the debts and liabilities of said bank,” etc. Other facts are found in said decree which it is unnecessary now to refer to, and the court go on then, after finding the facts, to order and decree tha-t payment be made, etc.
It may be proper here to remark, tha-t the examination and consideration of the case, which resulted in these decrees, have been bad by three of the four judges, then constituting the supreme court.
For the purpose of reviewing this latter decree, the bill of review, now under consideration, is filed.
The first error assigned is, that
“ The court decided that the said Bank of Circleville was a banking institution, within the meaning of the apt passed the twenty-fifth day of February, one thousand eight hundred and thirty-nine, entitled ‘ an act providing for the appointment of a board of bank commissioners, and for the regulation of banks within the State of Ohio, and the several acts amendatory thereof,’ (especially the one passed the eighteenth of February, in the year eighteen hundred and forty-two,) and that the complainants had title, under the said several acts, as receivers of the said bank of Circleville, to file their original, supplemental, and amended bill.”
*468 This assignment presents the' question, whether the facts in the case are sufficient to show that the stockholders of this bank had so organized, as to be legally acting under the act of 1818, by which the “ Bank of Circleville ” was incorporated. This question, it is true, must have been acted upon and determined by the court of common pleas, on the application of Wyman, in pursuance of which these receivers were appointed; but possibly this may not be conclusive of the question.
The third section of the act of incorporation is as follows: “ So soon as three thousand shares of said bank are subscribed for, and fifteen per cent, paid on each share, said commissioners shall immedately give four weeks’ notice of the time and place of electing directors, in the manner provided for giving notice of the payment of installments, by the eighth section of the act -to incorporate banks therein named, and to extend the charters of existing incorporated banks; and the persons who shall then be chosen, shall, forthwith, commence the operation of said bank, so far as may be necessary, in the appointment of other officers of the bank, and to direct such further installment or installments to be paid in, as the interest and advancement of the bank may require ; and all. payment on shares previous to said bank’s going into operation, shall be made, the one-half in gold and silver, and the other half in bills of the Bank of the United States, or some of its branches, or in specie, at the option of the stockholders.”
The fourth section is as follows: “ That so soon as fifteen •per centum on three thousand shares of the stock of said bank is actually paid in, it shall be the duty of the directors to give notice, to the governor of the state, that the said bank is ready to commence its full operations; and the governor, on the receipt of such notice, shall forthwith .appoint some suitable person, not a stockholder in said bank, to examine its books and vaults, and if, on examination,, it shall appear to the satisfaction of the governor, that the provisions of the third section of this act have been complied with, it *469 shall be the duty of the governor to give public notice that said Bank of Circleville has complied with the provisions of this section, and is thereby authorized to go into operation, and it is hereby authorized accordingly; but in case said bank shall commence issuing bills or notes, without having first complied with the provisions of this section, the charter thereby granted, and the privileges given, shall cease, determine, and be of no effect, and the stockholders of said bank shall be liable for the debts contracted, as though this act has never been passed.”
The evidence in the case shows that before the bank went into operation, fifteen per cent., or twenty-three thousand dollars in gold and silver, was paid into the bank by the stockholders, and the governor was notified that the bank was ready to go into full operation. The governor, however, refused, or failed to “ appoint a suitable person ” to examine the books and vaults, and to give the notice required under the fourth section. If I understand the case correctly, the stockholders had done all that was required of them by the third and . fourth sections, to give them the right to issue paper. That is, the three thousand shares were subscribed and the fifteen per centum paid in, in gold and silver. The governor was notified; — now if that officer neglected to perform the duty enforced upon him by the law, it will 'admit- of a question, whether the stockholders can thereby be deprived of a right or privilege conferred upon them by this act of incorporation.
The questions raised by this assignment were before this court, in the case of these same Receivers v. Seymour G. Renick, (16 Ohio Rep. 822,) and the court held, that “ the Bank of Circleville, having done all the law required, previous to the appointment of a commissioner by the governor to. examine its vaults, which the governor neglected to do, a person who has done business with it as a bank, and admitted its existence, by the receipt of its funds, cannot, in a suit against himself, by the receivers of the bank, question the legality of its organization.” If one who had done busi *470 ness with the Bank of Circleville, as a bank, and admitted its existence, by the' receipt of its funds, could not, in,a suit against himself, question the legality of its organization, much less can one of its officers or stockholders, who has assumed to do business under the act of incorporation, question the legality of the organization.
If this bank were now in existence, and doing business, and were this an action against a stranger, in no way connected with the association, we, should probably differ as to the legality of the organization. But we all agree in this, that the stockholders of the institution cannot, in a suit like the present, against themselves, defend upon the ground, that in assuming to act under the charter of incorporation, and to do a banking business, flooding the country with worthless paper, they have acted in violation of, and without authority, of law. They cannot thus shield themselves from responsibility.
The second error assigned, is — “ The court decided that, although the testimony did not prove an acceptance by complainant of the stock so transferred as aforesaid, to him, it proves a subsequent ratification of the said transfer, with full knowledge of all the circumstances attending the same, and of the illegal and fraudulent character of said bank.”
The third assignment is in the following words: — “ The court also decided, that,-as against the complainants, your orator could not show the stock to be valueless at the time of the said transfer to him.”
The fourth assignment is as follows: — “ The court also decided, that, as against the complainants, your orators could not give in evidence the declarations of the said Larimore, previous and subsequent to the date of the said supposed transfer.”
And the fifth assignment is in these words: — “ The court also decided, that, as against the complainants, your orator could not show the fraud and deception practiced upon him by the said Larimore, in the said transfer, nor the illegal and fraud ulent character of said bank.”
*471 So far as these four several assignments-are concerned, I do not find, upon examination of the record, that any of these points were directly decided by the court. They might have been, but- if they were, it must be shown by something other than the mere allegation of counsel, in framing the bill of review. That bill refers to the original bill, answers, evidence, and decrees in the original case, and they are made part of the bill of review. These points may have been raised in argument, and counsel may have supposed that the court could not have come to the conclusion it arrived at, without ruling as in the assignments stated. But this can be nothing. more than mere conjecture of counsel. As there is nothing in the record to show that these points were actually made, as alleged in the assignment, it is unnecessary further to consider them.
The last error assigned, is — “ That said decree was rendered in favor of complainants, when it should have been a decree dismissing the bill, as to your orator.”
This assignment, general in its terms, presents the question, whether, upon the whole case as made, the decree is in accordance with the principles of law and equity.
I presume that it will not be insisted, that, if the facts found in the decree are sustained by the evidence in the case, the decree itself is erroneous; so that, in truth, the real controversy is, whether the proofs in the case were sufficient to justify the finding of the court.
At this point of the case, a question was raised in the argument, which it becomes necessary to consider. It is insist ed by counsel for the defendants in review, that where the facts are found- by the court, in a decree, or as the basis of a decree, that upon bill of review, the court cannot go behind the decree, but must take the facts therein found as true, and if those facts justify the decree entered, then the bill of review must be dismissed. The finding of the court in chancery, is assimilated to the verdict of a jury in a court of law, and as the latter cannot be reversed on error, neithei can the former upon bill of review. On the other handj it is *472 insisted that, according to the practice in this state, by bill of review, the whole case sought to be reviewed, both as to matters of law and of fact, is opened for examination. In support of this position, the act of February 24th, 1848, entitled “ an act to dispense with the necessity of copying the papei’S in bills of review, and for other purposes,” is referred to. This act, which is found in the 46th volume of our statutes, at the 90th page, in its first section, authorizes any party to a decree, who shall seek to review that decree, to file in the clerk’s office, “ a short petition, setting forth the names of the parties to such suit, the substance of the decree or order sought to be reviewed,, and an assignment of the errrors relied upon to reverse or set aside said decree or order, and the prayer for such reversal; and errors in law and in fact may be assigned at the same time.”
The third section provides, “ that all the original papers and evidence in the original case, and entries made, shall be used on the hearing of said bill of review; and it shall not be necessary for the party to procure a copy of the record or proceedings, in the original cause, nor shall it be necessary to recite, in the bill of review, any of the facts set forth in the pleadings in the original cause.”
Now I do not suppose that it was the intention of the general assembly, by this legislation, to change any 'well known rule in chancery practice. The real object was, to place bills of review in chancery and writs of error at law to some extent, upon the same footing. It had been previously enacted, that in cases in erro!, the original pleadings and files should be returned to the appellate court; a full copy of the reoord was dispensed with; and by this act of 1848, 'the same course is prescribed in case of "review. The design, in reference to both classes of cases, was to save cost and labor. So far as the saving of labor is concerned, these provisions have, unquestionably, been very beneficial to' the bar, but they have been, fruitful sources of additional labor to the court.
*473 The question of the propriety of going behind the decree to ascertain the facts of a case, has been frequently consid ered in this court. It was before the court, in the case of Ludlow’s Heirs v. Kidd’s Executors et al. (2 Ohio Rep. 372), and in that case the court held, that, in bill of review, the original bill, answers, exhibits, and depositions are open for examination, where the decree contains no statement of facts found, or principles decided. This rule has never been departed from, in cases similarly situated. In that case there was a general finding, that the equity of the case was with the defendant, and upon such finding t-fie decree was based. This form of decree was very general ih the state for many years, and is, perhaps, now more usual than.any other. The court, in the case referred to, very properly say — “ When- the facts proved, and principles decided, are not inserted in the decree, a bill of review, for errors in law, would be useless, if this course was not pursued.” Such is the course pursued and accepted in that case.-
But although the usual forms of decrees were formerly as before stated, and although the same forms are still adhered to in many eases, yet there are decrees, where the facts found are embodied in the decree, and the question is, whether, in such case, the facts thus embodied in the decree, shall, by the reviewing court, be taken as the facts in the ease, or whether those facts shall be ascertained from the proofs on file.
In the case of Mitchell v. Gazzam et al., the judge, who-delivered the opinion of the court, after enumerating the errors assigned, says: — “ These are errors in fact, and we-feel compelled, to acknowledge the impropriety of the practice in this state, of converting bills-of review into mere rehearings. Bills of review should be confined to the correction of errors in. law, apparent upon the face of the record, except in cases of leave, upon newly-discovered evidence.” (12 Ohio Rep. 334.)
In the case of Stevens v. Hey et al. (15 Ohio Rep. 313), the court again had this matter under consideration, and expressly decided, that when the facts are stated in the de *474 cree, the court will only inquire, on review, whether the facts so found are a sufficient basis for the decree; but where the facts are not stated or found in the decree, the depositions and exhibits are open for examination.
In the case of Sea v. Carpenter et al. (15 Ohio Rep. 412), at the December term of the court, 1847, the same principle was again decided. In that case, the facts found were embodied in the decree, and the court refused to inquire whether those facts were correctly found or not, but confined itself to the inquiry, whether, upon the facts found, the decree was in accordance with the principles of law and equity. In neither of these, cases does there appear to have been any difference of opinion in the court.
To the' rule of practice which seems to have been reorganized and established by the two cases last referred to, there is a very serious objection, and one which is entitled to great consideration. It grows out of the practice prevailing, of permitting the solicitor of the successful party to draw up the decree; and in so doing, it is supposed that he may introduce such facts as may be necessary to sustain the decree, although the evidence may not be of that conclusive character to establish the facts found, as would be desirable. The decree so drawn is, or may be, handed to the court for inspection; but 'in the ordinary course of business, the court can have but little time to examine. Were the-rule to be adhered to, it would be necessary, unquestionably, to establish some further rules to regulate the matter, either by reference to a master or otherwise. I should still be disposed to adhere to the decisions made in the cases before referred to, which would preclude us from an examination of the depositions and exhibits in the case under consideration. But as, upon this question, the court is divided in opinion, it follows that we must consider the depositions and exhibits, as well as the pleadings and decree, open for examination.
The principal objection which I have, individually, to this course is, that it in a great measure destroys the distinction between reviews and rehearings. In the case before us, the *475 case was first heard in 1847, and a decree pronounced, the facts upon which the decree was based being embodied in the decree ; a petition for rehearing was allowed, and the case again heard upon the former evidence, with some additional depositions. After careful and critical examination, the court arrived at the same conclusión as before, and in substance affirmed the former decree. This bill of review was then filed, and we are called upon for the third time to investigate these same facts.
The questions of fact controverted in this case are, whether Voorhees was a stockholder in the Circleville bank; and if so, what was the amount of his stock ? These questions must be decided by the evidence. The receivers of the bank charge that Voorhees was a stockholder, and this he denies under bath. In 1847, in company with the then chief judge of the court (Judge Birchard), while holding the court in Pickaway county, I examined with much care the evidence in the case; and although perhaps too much predisposed to exonerate Voorhees from the charge, the conclusion forced itself irresistibly upon my mind, that he was in fact a stockholder of the bank, holding the amount of stock specified in the decree then rendered. The same result followed the examination the next succeeding year. And now, upon another and further examination, this court can come to no different conclusion.
The testimony in the case is voluminous and somewhat conflicting. The whole has been commented on by counsel, with much ingenuity and force. Taking this testimony in different parts of it, there may appear to be some discrepancy, and doubts might arise with respect to its effect; still, when the whole is taken together, it- would seem that no candid inquirer could come to a different conclusion than that heretofore arrived at by the court upon the circuit.
' Such is the mass of testimony, that it will be impossible to recapitulate it in this opinion, and I shall content myself with referring to a few items of evidence, that to my mind are par-, tieularly important.
*476 This-fact is undisputed, that upon the books of the bank, Voorhees appeared to be a stockholder of the bank, and the holder of stock to the amount of seven hundred .shares. These shares were transferred to him by Larimore, early in August, 1841. About this there is no controversy. And it is further apparent, that this was the only stock he had in the bai-.K.
Previous to this time it does not appear that Voorhees had any connection with the institution. But on the 25th July, 1841, he gave to Timothy G. Bates a paper, of which the following is a copy:
“ Dayton, July 25, 1841.
“ I hereby authorize T. G. Bates to draw for any amount, not. exceeding five thousand dollars, upon me, at Dayton (not in bank), as payment of any arrangement the said Bates may make with the Bank of Circleville, for my benefit; said-arrangement being understood to be the purchase of stock in said bank, of a loan uf not less than fifteen thousand dollars, t'o' be placed, subject to my check, in said institution ; and in the event of the purchase of stock, I hereby authorize the said Bates to represent me in voting, and this power shall exist twenty days and no longer.
“Peter Voorhees.”
This instrument shows that Voorhees had some disposition, at least, to become a stockholder in the Bank of Circleville; and the evidence shows, that in pursuance of an arrangement between Larimore, and Bates, acting for himself and for Voorhees, the transfer of stock was made upon the books of the bank by Larimore to Voorhees, or at least, if such is not the direct import of the testimony, it- is difficult to draw any other inference. With this power of attorney; Bates visited Columbus in the latter part of July, and negotiations were entered upon between Robert Larimore, Seymour G. Renick, and Bates, acting for himself and Voorhees. During the pendency of these negotiations, the transfer above alluded to was made. These negotiations resulted, on the 7 th of *477 August, in an agreement signed by Larimore, Renick, Bates, and Voorhees, by his attorney, Bates.
This agreement it is unnecessary to recite. It relates to the Bank of Circleville, of which the signers professed to be the owners, and to the manner in which the business of the institution should be conducted. The system of' banking provided for is somewhat novel. It would seem to indicate that the parties were more anxious to borrow money than to lend.
Although Bates signed this agreement for Voorhees, and as his attorney, yet it seems that, at this -time, he stated to his associates, tha-t Voorhees was not to be bound until he had been informed of what had been done, and assented thereto. And it is insisted by counsel, that Voorhees never did assent; in fact, that he was never acquainted with the arrangement; that he neither knew of the transfer of the stock, nor ever accepted of it. Upon this point there is no very direct testimony. But it would be somewhat singular that Bates, the friend and attorney of Voorhees, should neve^have informed him of his action in. the premises. Although there may be no direct evidence of the acceptance of the stock by Voorhees, yet it seems to the court, that- upon any other hypothesis "than that he did accept, his subsequent conduct is unwarrantable.
Early in November, 1841, the bank suspendéd payment, a-nd McCulloch, the cashier, wrote to Voorhees upon the subject.
To this letter, Voorhees returned-the following answer :
“ Dayton, Nov. 8, 1841.
“Dear. Sir: Yours, of the third instant, is at hand, in which you speak of resuscitating the bank at Circleville, of which I approve. I will be in Columbus at the time you speak of, and will, if others concerned think best, give my aid in that way. I cannot see any good reason of the bank stopping, if proper exertions had been made. I have on hand, of the 3,500 dollars received of Larimore, about eleven hundred and fifty dollars.
(Signed)
“ P. Voorhees.
*478 Surely the cashier of the bank would not have written to Yoorheeg about its resuscitation unless he had supposed him to be a stockholder, and none but a stockholder would have replied as did Yoorhees. Does he disclaim any interest in the answer? Not at all. But, he says, “if others concerned” think, best, I will give my aid in that way. That is, in the way of resuscitating the bank. There can be no mistake in the meaning of the language used in this letter, and it is such language as no man would have used, unless he at least supposed he had an interest in the concern about which he was writing.
It would seem that, in the letter of the cashier, something was said about a meeting for the purpose of an attempted resuscitation, and that a day was specified. In reply, Voorhees says, “ I.will be,in Columbus at the time you speak of.”
On the 17th day of November, two days after the’ letter last referred to was written, .there was a meeting at Columbus, and an agreement entered into, which commences as follows: “ We, the undersigned, who are the stockholders of the Circle-ville bank, chartered in 1818, agree to pay into said institution the respective sums affixed to our names,” etc.
There are other matters in the agreement, which I do not deem it necessary to repeat.
The agreement is signed by Peter Yoorhees, S. J. Renick, Robert Larimore,. for himself, and as attorney for T. Gr. Bates, and by John S. Iglehart. Here is an explicit acknowledgment 'by Voorhees that he was a stockholder. This arrangement, which was entered into with a view to resuscitate the bankj was noi^ carried into effect. If Yoorhees was a stockholder, and he here admits in direct and positive terms that he was, he became such in consequence of the transfer of stock by Larimore.
Among the papers in the case, is a letter, without date, directed to John S. Iglehart, and is as follows :
" “ Dear Sir : I shall be in Columbus, on Friday or Saturday next, when I hope your affairs will permit you to be there *479 also. I have no objection to paying immediately my stock in the new Oircleville bank, provided it can be new modeled so as to be at once profitable and safe to the community, and if you will come up and take charge of it until it gets fairly under way, the matter can be arranged at once. Be so good, as 'to-come, for I have no doubt you can be of advantage. Mr. Yoorhees will give you his opinion.
“ Yours, in haste,
“ T. G. Bates.”
“ P. S. Mr. Bates and niysdlf had a conversation on the subject, and agreed you were the only man of the concern that could make it go in the right way. I hope you will not fail to.go up.
“ P, Yoorhees.”
Bates, in his testimony, states that he thinks this letter was written the latter part of November.
On the 16th November, 1841, the following instrument is executed:
“Thisis to certify, that we will take up the circulation of the present Bank of Oircleville (chartered in 1818), provided the Messrs. Doddridge & Oo. will take up the obligation and contract with said bank, to the satisfaction of Messrs. Marfield •and McOolloch ;” which is signed by S. Renick, John S. Iglehart, P. Yoorhees, for himself, and T. G. Bates, Robert Larimore, and on the 23d December, by N. P. Iglehart.
On the 19th December, 1841, the following instrument was executed:
“ To the officers of the Bank of Oircleville:
“ This is to authorize N. P. Iglehart to vote all my stock in the Bank of Oircleville, and, generally, to do in the premises all that I could do if personally present.
(Signed). “ P. Yoorhees.”
Previous to this, on the 13th of December, Iglehart and Voorhees had been elected directors of the bank. Iglehart took the necessary oath ; but counsel say, that of this election Voorhees had no notice, nor is there any evidence to prove that ha was notified.
*480 On the 16th January, 1842, Yoorhees wrote to Bates as follows : “ Mr. Reniek holds my receipt for thirty-five hundred dollars. I wish you to let him have the stock 1 have in the Cirdeville lank, and pay him the remainder in the paper I sent by you,” etc.
On the 18th February, 1842, he wrote to Larimore, and among other things says, “ If Mr. Renick will take my stock I will pay him five hundred dollars,” etc.
Such are some of the items of -testimony in the case, and it does seem -to us, no sane man could have used the language, could have-pursued the course of conduct which Yoorhees did, unless he had an interest — unless he was a stockholder in this bank.
It is attempted to explain away, to destroy the force of this evidence by other testimony, as well as by the most ingenious arguments, but it will not do. Yoorhees was a stockholder in the Cirdeville bank. To him it has proved an unprofitable speculation. But law and justice require that he should pay, in proportion to his stock, an amount sufficient to redeem the paper put in circulation by the institution, which is hitherto unredeemed. It is possible he may have been duped by others, as his counsel seem to suppose, but we very much doubt whether, in ordinary cases, he would be willing to admit that such a thing could be easily done.

The bill of review is dismissed with costs.